# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 07-3242

_____

Mayo Foundation for Medical     *
Education and Research; Mayo Clinic,     *
    *
       Plaintiffs - Appellees,     *
    *
       v.     *
    *
United States of America,     *
    *
       Defendant - Appellant.     *

_____           Appeals from the United States
                        District Court for the
No. 08-2193         District of Minnesota.

_____

Regents of the University of Minnesota,   *
    *
       Plaintiff - Appellee,     *
    *
       v.     *
    *
United States of America,     *
    *
       Defendant - Appellant.     *

_____

Submitted: October 16, 2008
Filed: June 12, 2009

_____

Before LOKEN, Chief Judge, BYE and SMITH, Circuit Judges.

LOKEN, Chief Judge.

"Residents" participating in accredited graduate medical education programs receive substantial payments (called stipends) from the Mayo Foundation for Medical Education and Research ("Mayo") and the University of Minnesota (the "University") for medical and patient care services provided by the residents at affiliated and unaffiliated hospitals and clinics. The difficult issue in these cases is whether these payments qualify for the student exception to Federal Insurance Contributions Act ("FICA") taxes imposed on employers and employees. See 26 U.S.C. § 3121(b)(10). The district court answered this question affirmatively, declaring invalid recently promulgated Treasury Regulations to the contrary and awarding Mayo and the University refunds of substantial FICA taxes paid during the second quarter of 2005. Mayo Found. for Med. Educ. & Research v. United States, 503 F. Supp. 2d 1164 (D. Minn. 2007); Regents of the Univ. of Minn. v. United States, 2008 WL 906799 (D. Minn. Apr. 1, 2008). The United States appeals. We review the district court's invalidation of Treasury Regulations *de novo*. Walshire v. United States, 288 F.3d 342, 345 (8th Cir. 2002). Concluding that we must defer to the regulation limiting this exception to students who are not full-time employees because it is a permissible interpretation of the statute, we reverse.

**I.**

FICA taxes, which support the Social Security system, are imposed on both employers and employees based upon wages paid. 26 U.S.C. §§ 3101, 3111. The term "wages" is broadly defined in § 3121(a) as "all remuneration for employment." "Employment" is also broadly defined in § 3121(b) as "any service, of whatever nature, performed . . . by an employee," but there are twenty-one specific statutory exceptions. At issue here is the exception for "service performed in the employ of . . . a school, college, or university . . . if such service is performed by a student who is

-2-

enrolled and regularly attending classes at such school, college, or university." 26 U.S.C. § 3121(b)(10).

A student exception has been part of the FICA and Social Security statutes since 1939. Although litigation regarding its application to medical school stipends paid to enrolled residents arose only recently, it has now exploded across the country. The avalanche began when Minnesota sued the Commissioner of Social Security to recover assessments for stipends paid to the University's medical residents under a "Section 218 Agreement," the mechanism by which States such as Minnesota then obtained Social Security coverage for designated employees. The district court ruled for the State on two alternative grounds, and we affirmed. Minnesota v. Chater, 1997 WL 33352908 (D. Minn. May 21, 1997), aff'd, Minnesota v. Apfel, 151 F.3d 742 (8th Cir. 1998). The first ground, that the State did not intend to designate medical residents under the Agreement, is of no relevance here. But the alternative ground, that medical resident services fell within the student exception in the Social Security Act, 42 U.S.C. §§ 410(a)(7)(A), 418(c)(5), prompted the filing of more than 7,000 claims with the IRS, as medical schools sought refunds of FICA taxes on medical resident "wages," based on the student exception in 26 U.S.C. § 3121(b)(10).[1]

One refund claim was filed by Mayo. The IRS paid the refund, sued to recover it, and Mayo counterclaimed for refunds in other years. At that time, as one familiar with federal tax law would expect, there was a lengthy Treasury Regulation interpreting the student exception statute, which provided in relevant part:

> (b) For purposes of this exception, the amount of remuneration for services performed . . . the type of services performed . . . and the place where the services are performed are immaterial. The statutory tests are

---

[1]In 1987, Social Security taxation of state employees such as the University's residents was transferred to the FICA provisions of the Internal Revenue Code. See Pub. L. No. 99-509, sec 9002(b), 100 Stat. 1874, 1971-72 (1986).

(1) the character of the organization . . . as a school, college, or university . . . and (2) the status of the employee as a student enrolled and regularly attending classes at the school, college, or university by which he is employed . . . .

(c) . . . An employee who performs services in the employ of a school, college, or university, <u>as an incident to and for the purpose of pursuing a course of study at such school</u>, college, or university has the status of a student in the performance of such services. . . .

(d) The term "school, college, or university" . . . is to be taken in its commonly or generally accepted sense.

Treas. Reg. (26 C.F.R.) § 31.3121(b)(10)-2(b)-(d) (2004) (emphasis added).

After a bench trial, the district court granted judgment in favor of Mayo. Relying on our decision in <u>Apfel</u> that the Social Security Act regulations required a fact-specific, "case-by-case examination," 151 F.3d at 748, and applying the above quoted portions of the Treasury Regulations, the court found that Mayo was the employer of its medical residents; that Mayo is a school, college, or university; that the residents were "students" enrolled in a residency program and regularly attending classes; and that "the patient care services provided by residents in the [Mayo] residency programs were incidental to and for the purpose of pursuing a course of study in postgraduate medical education." <u>United States v. Mayo Found. for Med. Educ. & Research</u>, 282 F. Supp. 2d 997, 1011-18 (D. Minn. 2003) (<u>Mayo I</u>).

The government appealed this decision but then dismissed the appeal and published notice of proposed regulations amending Treas. Reg. § 31.3121(b)(10)-2. 69 Fed. Reg. 8604 (Feb. 25, 2004). After extensive public comments and a hearing, the IRS promulgated final amended regulations, effective April 1, 2005. T.D. 9167, 2005-1 C.B. 261, 69 Fed. Reg. 76404 (Dec. 21, 2004). As relevant here, the amended regulations provide, with the amendments at issue highlighted:

(b) . . . The statutory tests are:

(1) The character of the organization . . . as a school, college, or university <u>within the meaning of paragraph (c) of this section</u> . . . and

(2) The status of the employee as a student enrolled and regularly attending classes <u>within the meaning of paragraph (d)</u> . . . .

(c) . . . <u>An organization is a school, college, or university within the meaning of section 3121(b)(10) if its primary function is the presentation of formal instruction . . . . See section 170(b)(1)(A)(ii) and the regulations thereunder.</u>

(d) . . . In order to have the status of a student . . . the employee's services must be incident to and for the purpose of pursuing a course of study <u>within the meaning of paragraph (d)(3) of this section</u> . . . .

[(d)(3)](iii) . . . <u>The services of a full-time employee are not incident to and for the purpose of pursuing a course of study. . . . [R]egardless of the employer's classification of the employee, an employee whose normal work schedule is 40 hours or more per week is considered a full-time employee. . . . The determination of an employee's normal work schedule is not affected by the fact that the services performed by the employee may have an educational, instructional, or training aspect.</u>

Though the amended regulations cover a broader range of issues, the "Need for Regulations" section of the notice of proposed rulemaking expressly focused on medical residents and the decisions in <u>Apfel</u> and <u>Mayo I</u>. <u>See</u> 69 Fed. Reg. at 8605. The final regulations include as an example of services *not* excepted under 26 U.S.C. § 3121(b)(10) a person employed by a university to provide patient care services at an affiliated teaching hospital if the employee works at least forty hours per week, even if the services have an educational or training aspect. Such services are not excluded, the regulations explain, because the person is a full time employee and

therefore his services "are not incident to and for the purpose of pursuing a course of study."  Treas. Reg. § 31.3121(b)(10)-2(e), Example 4.

The amended regulations apply to the calendar quarters here at issue, but the district court held them invalid.  In Mayo's case, decided first, the court concluded:

> (i) the "primary function" test in Treas. Reg. 31.3121(b)(10)-2(c) "is inconsistent with the plain meaning of [the term 'school, college, or university' in] the statute and is invalid."

> (ii) "the full-time employee exception [in Treas. Reg. 31.3121(b)(10)-2(d)(3)] is invalid because it is inconsistent with the plain meaning of the statute and is arbitrary, capricious, and unreasonable" because the term student, like the term school, college, or university, "is not ambiguous."

503 F. Supp. 2d at 1171-77.  Eight months later, the court granted summary judgment in favor of the University.  The court adopted its ruling in Mayo's case that the amended regulations are invalid, applied the prior regulations, and concluded that the University's medical residents (i) are employed by the University, not by the independent hospitals where they provide patient care services, (ii) are "enrolled" and "regularly attending classes" in a residency program, and (iii) provide patient care services that are "incident to and for the purpose of pursuing a course of study."

The government appeals both decisions, arguing that the amended regulations are valid and challenging the grant of summary judgment to the University on the employer issue.  We assigned both appeals to the same panel, which heard oral arguments the same day.  We resolve both appeals in a single opinion because a single common issue is controlling.  We will focus first on that issue, the validity of the full-time employee limitation in 26 C.F.R. § 31.3121(b)(10)-2(d)(3)(iii).

## II.

Treasury Regulations interpreting the Internal Revenue Code are entitled to substantial deference. Boeing Co. v. United States, 537 U.S. 437, 448 (2003). But in reviewing an agency's interpretation of a statute, the first question is "whether Congress has directly spoken to the precise question at issue." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). If it has, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. On the other hand, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

**A.** In these cases, the district court invalidated the "primary function" and "full-time employee" provisions in the amended regulations as contrary to the plain meaning of an unambiguous statute. Likewise, four of our sister circuits have recently declared, in cases arising under the former regulations, that the student exception statute is unambiguous and "does not limit the types of services that qualify for the exemption." United States v. Mount Sinai Med. Ctr. of Fla., Inc., 486 F.3d 1248, 1251-56 (11th Cir. 2007); accord United States v. Mem'l Sloan-Kettering Cancer Ctr., 563 F.3d 19, 27 (2d. Cir. 2009); United States v. Detroit Med. Ctr. 557 F.3d 412, 417-18 (6th Cir. 2009); Univ. of Chi. Hosps. v. United States, 545 F.3d 564, 567 (7th Cir. 2008).[2] In other words, these courts reasoned, because judges know what is a "school" and who is a "student" and what it means to be "enrolled and regularly attending classes," a Treasury Regulation interpreting these common terms is invalid.

---

[2] Viewed narrowly, these circuit court decisions held only that the statute *as construed in the prior regulations* precluded the government's contention that payments to medical residents are *categorically* ineligible for the student exception. We do not quarrel with that holding, which is consistent with Apfel and Mayo I. But those courts did not address the validity of the amended regulations, which in our view raises an entirely different issue under accepted administrative law principles.

If that interpretation of the statute is correct, we must affirm in <u>Mayo</u> and turn to the remaining question whether the University is the "employer" of its medical residents. <u>See generally</u> <u>Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 980-83 (majority op.), and 1016-19 (Scalia, J., dissenting) (2005).

But this interpretation of 26 U.S.C. § 3121(b)(10), part of the Internal Revenue Code, cannot be correct. In numerous cases, the Supreme Court has upheld Treasury Regulations construing words in tax statutes that may have a common or plain meaning in other contexts. For example, in <u>Helvering v. Reynolds</u>, 313 U.S. 428 (1941), the court upheld a regulation construing the statutory term "acquisition" of a contingent remainder interest in property devised by will to mean when the decedent died, not when the remainderman obtained title many years later. The Court explained, "However unambiguous that word might be as respects other transactions . . . its meaning in this statutory setting was far from clear." <u>Id.</u> at 433.

Likewise, in <u>Magruder v. Washington, Baltimore & Annapolis Realty Corp.</u>, 316 U.S. 69, 73 (1942), the Court in upholding the regulation at issue explained, "[t]he crucial words of the statute, 'carrying on or doing business,' are not so easy of application to varying facts that they leave no room for administrative interpretation or elucidation." In <u>United States v. Correll</u>, 389 U.S. 299, 304 (1967), the Court upheld a regulation limiting the deduction for travel expenses by excluding trips that require neither sleep nor rest, explaining "[t]he language of the statute -- 'meals and lodging . . . away from home' -- is obviously not self-defining." In <u>National Muffler Dealers Ass'n v. United States</u>, 440 U.S. 472, 476 (1979), the Court upheld a regulation construing the term "business league," concluding that the term is "so general as to render an interpretive regulation appropriate." And in <u>Cottage Savings Ass'n v. Commissioner</u>, 499 U.S. 554, 559-61 (1991), the Court upheld a regulation construing the term "disposition of property" as being limited to exchanges of property for "materially different" property, an interpretation of the statute that a judge steeped in property law principles would surely find contrary to plain meaning.

To be sure, the Court has occasionally invalidated Treasury Regulations or proposed regulations as contrary to the plain meaning of the statute. See, e.g., Knight v. Comm'r, 552 U.S. 181 (2008); Maass v. Higgins, 312 U.S. 443 (1941). But in the vast majority of cases, the Court has not invalidated an interpretive Treasury Regulation simply because the statute used a term that has a plain or common meaning in other contexts.

In this case, the statute excepts from the term "wages" the services of "a student who is enrolled and regularly attending classes." The prior regulation construed this phrase as reflecting an integrated concept: "An employee who performs services in the employ of a school, college, or university, *as an incident to and for the purpose of pursuing a course of study* at such school, college, or university *has the status of a student* in the performance of such services." Treas. Reg. § 31.3121(b)(10)-2(c) (2004) (emphasis added). Significantly, the district court did not question the validity of this limitation. Indeed, it applied the former regulation after invalidating the amended regulation. This interpretation, which limits the student exception to services that are subordinate to the student's educational activities, is not the only possible interpretation of the common words "student," "enrolled," and "regularly attending classes." But those words must be construed in context, and when the context is a provision of the Internal Revenue Code, a Treasury Regulation interpreting the words is nearly always appropriate. We hold that the statute is silent or ambiguous on the question whether a medical resident working for the school full-time is a "student who is enrolled and regularly attending classes" for purposes of 26 U.S.C. § 3121(b)(10).

**B.** Having concluded that the statute is silent or ambiguous on this question, we turn to the second part of the Chevron analysis, determining whether the Commissioner's amended regulation is a permissible interpretation of the statute. For this inquiry, the Supreme Court's opinion in National Muffler is instructive:

In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute.

440 U.S. at 477. We must defer to a Treasury Regulation so long as it is reasonable. Cottage Savings, 499 U.S. at 560-61.

The amended regulation modified the general "incident to" test in the prior regulation by providing that "[t]he services of a full-time employee are not incident to and for the purpose of pursuing a course of study," and, more particularly, that an employee who works forty hours per week or more is considered "full-time." Treas. Reg. § 31.3121(b)(10)-2(d)(iii). This regulation "harmonizes" (does not conflict) with the plain language of the statute. Whether it is consistent with the student exception's origin and purpose requires closer scrutiny.

The student exception and other exceptions to the statutory definition of "wages" and "employment" were first enacted in the Social Security Act Amendments of 1939, Pub. L. No. 76-379, sec. 606, § 1426(a) & (b), 53 Stat. 1360, 1383-86. At this time, the Social Security program was in its infancy, and its coverage was less universal. The 1939 amendments excepted all federal, state, and local government employees, which included all employees of the University. Id. § 1426(b)(6), (7). In addition, services performed by employees of tax-exempt organizations were largely excluded, including service "performed by a student who is enrolled and is regularly attending classes at a school, college, or university." Id. § 1426(b)(10)(A)(iii).

-10-

Services performed by students employed by a non-tax-exempt school were also excluded if the student was enrolled and regularly attending classes at that school *and* the remuneration in a calendar quarter "does not exceed $45 (exclusive of room, board, and tuition)." § 1426(b)(7), (10)(A)(iii), & (10)(E), 53 Stat. at 1384-85. And Congress provided a separate exclusion for student nurses and medical interns employed by private hospitals. Id. § 1426(b)(13), 53 Stat. 1385. The congressional committee reports explained:

> The intent of the amendment is to exclude those persons and those organizations in which the employment is part-time or intermittent and the total amount of earnings is only nominal, and the payment of the tax is inconsequential and a nuisance. The benefit rights built up are also inconsequential. Many of those affected, such as students and the secretaries of lodges, will have other employment which will enable them to develop insurance benefits.

H.R. Rep. No. 76-728 (1939), reprinted in 1939-2 C.B. 538, 543; S. Rep. No. 76-734 (1939), reprinted in 1939-2 C.B. 565, 570.

When Congress amended the Social Security Act in 1950, it combined the student exception for employees of tax-exempt and non-exempt schools and eliminated the $45 remuneration limit, but severely limited the broad exception for services by other employees of tax-exempt organizations. Social Security Act Amendments of 1950, Pub. L. No. 81-734, sec. 204(a), § 1426(b)(11)(A) & (B), 64 Stat. 477, 531. The House Committee on Ways and Means report explained: "The bill would continue to exclude service performed for nominal amounts in the employ of tax-exempt nonprofit organizations, service performed by student nurses and internes, [sic] and service performed by students in the employ of colleges and universities." H.R. Rep. No. 81-1300(1950), reprinted in 1950-2 C.B. 255, 260; see also S. Rep. No. 81-1669 (1950), reprinted in 1950-2 C.B. 302, 308. Given the explicit legislative history that these FICA exceptions were directed to part-time

workers, we conclude that the full-time employee limitation in the amended regulation is consistent with the origin and purpose of the student exception. See Johnson City Med. Ctr. v. Untied States, 999 F.2d 973 (6th Cir. 1993), upholding Revenue Ruling 85-74, 1985-1 C.B. 331, 332, which interpreted the student nurse exception as limited to employment "substantially less than full time" where "[t]he total amount of earnings is nominal."

Whether the regulation is a substantially contemporaneous construction of the statute or dates from a later period, the manner in which it evolved, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the issue are also complex factors in this case. Mayo and the University argue that the full-time employee provision is of recent vintage, which is obviously true, and is inconsistent with the Commissioner's "prior longstanding interpretation" of the statute, which requires close examination.

The provision limiting the student exception to services that are "incident to and for the purpose of pursuing a course of study" has been in the regulations for more than fifty years. See T.D. 6190, § 31.3121(b)(10)-2(c), 1956-2 C.B. 605, 653. We have found no reported rulings or decisions applying the student exception or this regulation to medical residents prior to 1978. There are likely a number of reasons for this vacuum: (i) in 1939 and for some years thereafter residents functioned more like young doctors than students, (ii) all public employees were excluded until 1950 and until 1991 States could elect to exclude public employees, and (iii) at least some medical schools claimed their payments to residents were non-taxable scholarships. But a series of events brought this student exception issue to the fore:

• In 1964, the Sixth Circuit held that medical residents did not fall within the intern exception even though "distinctions between interns and residents-in-training have been substantially reduced in the years since 1939." St. Luke's Hosp. Ass'n of Cleveland v. United States, 333 F.2d 157, 164 (6th Cir. 1964). The student exception

was not at issue in St. Luke's, likely because the employer was a private hospital, not a medical school.

• The next year, Congress expanded coverage of the Social Security program by repealing the intern exception and the exception for self-employed doctors. Social Security Amendments of 1965, Pub. L. No. 89-97, sec. 311, 79 Stat. 286, 380-81. The legislative history noted the plight of an intern's young widow and children left without Social Security benefits. H.R. Rep. No. 89-213 at 95 (1965), reprinted in 1965-2 C.B. 733, 735.

• In 1969, the Supreme Court ended the practice of treating stipends to medical residents as non-taxable "scholarships" when it ruled "that bargained-for payments, given only as a '*quo*' in return for the *quid* of services rendered," are not excludable from income as "scholarships." Bingler v. Johnson, 394 U.S. 741, 757 (1969).

• In a 1978 ruling, the Commissioner of Social Security cited St. Luke's and observed, "[t]he Social Security Administration has always held that resident physicians are not students." Social Security Ruling 78-3, 1975-1982 Soc. Sec. Rep. Serv. 315, 1978 WL 14050 (S.S.A.).

• In a 1985 ruling, the Commissioner construed the language of the statute and its legislative history as limiting the student nurse exclusion to "substantially less than full-time" employment for "nominal" earnings. Rev. Rul. 85-74, 1985-1 C.B. 331. In Johnson City, the Sixth Circuit majority upheld that Revenue Ruling; even the dissent would have upheld the "substantially less than full-time" limitation. 999 F.2d at 983 (Batchelder, J., dissenting).

Mayo and the University argue that the amended regulations reflect a change from the "purely facts and circumstances approach" of the prior regulation, to "bright-line limitations upon eligibility." But they cite no evidence that the Commissioner has

ever agreed that a medical resident working forty hours a week or more and earning upwards of $50,000 per year qualified for the student exception. Rather, the historical record reflects a consistent substantive policy applying the generally worded "incident to" regulation as not including full-time student employees. Our decisions in Apfel and Mayo I applied the prior regulation in a contrary manner, and the Commissioner responded with amended regulations more specifically articulating the underlying policy. The Supreme Court has repeatedly held that agencies may validly amend regulations to respond to adverse judicial decisions, or for other reasons, so long as the amended regulation is a permissible interpretation of the statute. See Dickman v. Comm'r, 465 U.S. 330, 343 (1984); Morrissey v. Comm'r, 296 U.S. 344, 354-56 (1935). An agency's substantial change of position is relevant to reasonableness, but not determinative. Norwest Corp. v. Comm'r, 69 F.3d 1404, 1410 (8th Cir. 1995), citing Dickman, cert. denied, 517 U.S. 1203 (1996); accord McNamee v. Dep't of the Treasury, 488 F.3d 100, 109-10 (2d Cir. 2007).

Mayo and the University concede, as the district court recognized, that the prior regulation limiting the student exception to services "incident to and for the purpose of pursuing a course of study" is a permissible interpretation of the statutory student exception. In the notice of proposed rulemaking, the IRS set forth a lengthy, detailed, historically accurate explanation of why "IRS and Treasury believe that Congress has shown the specific intent to provide social secuity coverage to individuals who work long hours, serve as highly skilled professionals, and typically share some or all of the terms of employment of career employees, particularly medical residents and interns." 69 Fed. Reg. 8604 at 8608. We conclude that this interpretation of the student exception, while not the only permissible interpretation, does not conflict with the plain language of the statute, and is consistent with the origin and purpose of the student exception as initially enacted and with Congress's frequent expansion of Social Security coverage in the last fifty years. We do not doubt -- indeed we applaud -- the educational benefits of the medical residency programs offered by Mayo and by the University. We do not rule that medical residents are not "students" or are not

"enrolled" or are not "regularly attending classes" for other purposes. But we conclude that the full-time employee regulation is a permissible interpretation of the statutory student exception and therefore, in the tax periods in question, the residents' compensation for health care and patient services was subject to FICA taxes.

## III.

The government also argues that the district court erred in invalidating the amended regulation providing that an organization, in this case Mayo, is not a "school, college, or university" within the meaning of 26 U.S.C. § 3121(b)(10) unless its "primary function" is education. Although we are inclined to believe that this provision is arbitrary and unreasonable *in this context*, we need not decide the issue because it is undisputed that Mayo's medical residents did not fall within the student exception during the tax year in question because they worked more than forty hours per week and were therefore full-time employees. For the same reason, we need not address the Government's contention that the district court erred in concluding as a matter of law that the University's medical residents were employed by the University, not by the independent hospitals where their services were performed.

## IV. Conclusion

For the foregoing reasons, the judgments of the district court are reversed, and the cases are remanded for entry of judgments in favor of the United States. Further proceedings to determine the proper terms of those judgments, if needed, are of course not foreclosed.

_____