STATE of Minnesota, Respondent,

v.

**Gerard J. COSTELLO, Appellant.**

**No. C7–00–436.**

Court of Appeals of Minnesota.

Jan. 23, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and Christopher D. Cain, Attorney at Law, Mankato, MN, for respondent.

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by
TOUSSAINT, Chief Judge,
STONEBURNER, Judge, and FOLEY, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant Gerard J. Costello challenges his convictions of drinking and driving of-

fenses and giving a false name to a peace officer, arguing that he was deprived of a fair trial by an impartial jury because the district court allowed jurors to submit questions for witnesses. Costello also argues that the evidence was insufficient to support his conviction of giving a peace officer a false name. Because we conclude that the questioning process did not violate Costello's rights and the evidence at trial was sufficient to support his conviction for giving a false name to a peace officer, we affirm.

## FACTS

Appellant Gerard J. Costello was charged with two counts of aggravated driving under the influence of alcohol, three counts of driving under the influence of alcohol, driving after cancellation, and giving a false name to a peace officer. During his trial, Costello admitted he drank alcohol and drove his vehicle but raised the defense of necessity, arguing that he left his boarding house in his vehicle to escape an assault. Costello also admitted that he gave a police officer a false name when he was stopped, but claimed he did not intend to obstruct justice because he immediately gave his correct name when the officer warned him that giving a false name to a peace officer was a chargeable offense.

At a pretrial conference, counsel for Costello noted and objected to the district court's occasional practice of permitting jurors to question witnesses. The prosecutor did not oppose the objection. At Costello's trial, the district court gave the following preliminary instruction to the jury:

> Questions by jurors. In this trial you will be allowed to submit questions for the witnesses. This is a procedure that I'm applying on a case by case basis, so if you're in another trial, you may not be

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

provided this opportunity. If you have a question for a particular witness, you must write it down. Unless your handwriting is very legible, please print. Don't sign the question. Signal the bailiff, who will bring your question to me. Now, keep in mind that your question must be submitted before the particular witness leaves the witness stand. In order to be sure that I'll not miss a question, before I excuse a witness I'll try to remember to make a general inquiry of you as to whether you have any questions. Sometimes I forget, so the final burden is on you if you have a question, to make sure that I see your hand. But I also want to stress that it's not necessary for you to ask any questions, and I've had more than one trial where not one question was asked by a juror. All right? So, just an opportunity, that's all it is. I'll apply the same rules of evidence to any of your questions that I apply to those asked by the attorneys. If I decide that a particular question cannot be asked, I'll tell you. You shouldn't speculate as to why your question was not asked. And if I decide not to ask a particular question, I hope you won't interpret it as some sort of an adverse reflection upon you or the person asking it. Like I say, it's an opportunity. You may avail yourself of it; a lot of folks don't. And if you do, then the same rules apply and I'll let you know.

The jurors submitted four questions during the trial. The prosecutor objected to one question and it was not asked. The other questions were asked by the district court. The arresting officer was asked:

Q: Officer, when you first saw the pickup, did it appear to be moving with any urgency as if to get away in a hurry?

A: No, it just appeared to be—it just had completed, it looked like, back—when I came around the cor-

ner of the house, the stalls are right in the back of the house. There's like three stalls, apparently, for parking at that house, and I just saw it backing, and then it stopped, and it was just going into gear to go forward, and I put my hand up. And no, it didn't seem to be moving in any urgency.

Costello's girlfriend was asked:

Q: I think you answered this question, but did you ever talk to Gerard Costello or warn him in regard to this threat from the Schneider brother[s]? [1]

A: I warned him, yes.

This question was followed up with questions from the district court:

Q: How did you do that?

A: Through his boss, Tim Hansen.

Q: Oh, you talked to Hansen?

A: Yeah.

Costello was asked:

Q: What was your intended destination when you were attempting to leave the parking lot before Officer Padilla stopped you?

A: I had told Padilla that I was only going to go down about a half a block and park the truck and walk from there.

Counsel for Costello did not object to any of the questions submitted by jurors and was allowed to engage in follow-up questioning in response to juror's questions. He argued in closing with regard to the question about urgency, that Costello was "just starting out." The prosecutor made no reference to the juror's questions in closing argument.

Costello was convicted of aggravated driving under the influence of alcohol (driving under the influence of alcohol within five years of a prior conviction), driving with an alcohol concentration of .20 or more as measured within two hours of

---

1. Costello alleged that the Schneider brothers had assaulted him in the boarding house where they all rented rooms, necessitating his use of his automobile.

driving, driving after cancellation, and giving a false name to a peace officer. He appeals, arguing that the process of allowing jurors to question witnesses deprived him of a fair trial and that the evidence was insufficient to support a determination that he intended to obstruct justice by giving a false name to a peace officer.

## ISSUES

1. Did the district court's procedure in allowing jurors to question witnesses deprive Costello of a fair trial by an impartial jury?

Was the evidence sufficient to support Costello's conviction of giving a false name to a peace officer?

## ANALYSIS

**1. Juror questions**

Costello does not argue that the specific questions asked in this case were prejudicial. He argues that the process itself caused him to have a trial that was considerably different in quality from the trials of most other defendants in Minnesota and deprived him of a fair trial by an impartial jury. Costello argues that a district court cannot implement a "local practice," relying on Minn.R.Crim.P. 1.03, which provides:

> Any court may recommend rules governing its practice not in conflict with these rules or with the General Rules of Practice for the District Courts and those rules shall become effective as ordered by the Supreme Court.

No rule specifically allows or prohibits juror questions to witnesses. In *State v. Crawford*, 96 Minn. 95, 104 N.W. 822 (1905), the Minnesota Supreme Court affirmed a first-degree murder conviction, finding no abuse of discretion when the district court allowed a petit juror to question a witness directly. The supreme court noted the defense counsel's failure to object to the juror's questioning, the fact that the juror's questions had already been essentially covered in earlier questioning,

and the overwhelming amount of evidence supporting the verdict. *Id.*, at 100, 104 N.W. at 824. The *Crawford* court commented, however, that there is ordinarily no occasion for a jury member to interrogate a witness. *Id.*

The majority of jurisdictions that have addressed the issue have held that permitting jurors to question witnesses lies within the sound discretion of the district court. Some of these jurisdictions expressly approve of jurors asking questions, while others discourage the practice. "All, however, agree that it is a matter within the trial court's discretion and that generally a verdict will not be reversed absent a showing of prejudice." *State v. Hays*, 256 Kan. 48, 883 P.2d 1093, 1098 (1994) (citing 30 cases).

Nebraska and Texas are apparently the only jurisdictions that prohibit any juror questioning of witnesses. *See State v. Zima*, 237 Neb. 952, 468 N.W.2d 377, 380 (1991); *Morrison v. Texas*, 845 S.W.2d 882, 889 (Tex.Crim.App.1992) (en banc). In *Morrison*, the Texas Court of Criminal Appeals prohibited the practice of juror questioning of witness, agreeing with the defendant that juror questions amount to a form of communication between jurors and the parties, which calls into question the integrity of the adversary system. 845 S.W.2d at 884. The Texas Court of Criminal Appeals stated:

> To allow our adversary system to travel, without prior authorization, unregulated by statute or rule, in the direction encouraged by the trial court's practice is inconsistent with the principles underlying the system. Further, the dangers inherent in such a practice cannot be adequately circumvented by the imposition of procedural safeguards.

*Id.*

In *Zima*, the Supreme Court of Nebraska prohibited juror questioning of witnesses. 468 N.W.2d at 380. The Nebraska Supreme Court was primarily concerned about what effect juror questioning

may have, or appear to have, on juror impartiality and concluded that a change in the traditional system "does not on its face suggest a fairer or more reliable truth-seeking procedure." *Id.* at 380.

The procedure used by the district court in the instant case eliminated: (1) any risk that an attorney would be forced to make an objection to a question in front of the inquiring juror, thereby offending the juror; (2) the problem of a juror asking a question prohibited by the rules of evidence; and (3) any tension or antagonism that could result from direct questioning. Remaining risks that have been identified by other jurisdictions are (1) that other jurors may become aware of what the questioning juror is thinking, which may begin the deliberation process before the evidence is concluded and (2) disruption to courtroom decorum. *Hays,* 883 P.2d at 1099. There is no indication in the present case that jurors discussed the case before it was submitted or that courtroom decorum was affected.

"[J]urisdictions that permit jurors to question witnesses reason that the purpose of a trial is a quest for truth and that juror questions may help get to the truth. The practice may alert counsel who are familiar with the case to problems that would bother a juror hearing the case for the first time." *Id.* The reasoning here is that the jury, as the finder of fact, should be permitted to ask questions that may assist in reaching its ultimate decision in the case. *Id.* Jurisdictions that permit juror questioning as within the discretion of the district court review the district court's exercise of discretion under the totality of the circumstances in each case. *United States v. Sutton,* 970 F.2d 1001, 1005 (1st Cir. 1992).

■ Costello, citing much of the reasoning set out in *Morrison,* asks this court to invoke the state and federal constitutional guarantees of a fair trial by an impartial jury to prohibit jury questioning of witnesses and to vacate his convictions. Costello notes that it is impossible to de-termine exactly what effect the practice of juror questioning had on this jury but argues that prejudice should be presumed. The state argues that if the process has any potential for prejudice, the potential for prejudice to the state is the same as it is to defendant, depriving neither of a fair trial. While recognizing that a procedure inviting juror questions raises policy issues that might be best addressed by the appropriate rules committee, this court declines to hold that the process violates per se a defendant's right to a fair trial by an impartial jury. We agree with jurisdictions that find the process is within the sound discretion of the district court exercising its trial-management authority, and we will review the exercise of this discretion on a case-by-case basis.

■ Given the absence of any rule prohibiting juror questions, the procedural safeguards used by the district court in the instant case, the nature of the questions asked, the absence of objections to the questions asked, and Costello's admission that the specific questions asked did not prejudice him, we hold that the process of jury questioning in the instant case did not violate Costello's federal or state constitutional right to a fair trial by an impartial jury and does not warrant vacation of his convictions.

## 2. Sufficiency of evidence

■ Costello admitted at trial that he initially gave the police officer his brother's name: "I was hoping my brother had a license, so I was thinking my brother's name. I don't know." Costello's testimony constitutes sufficient evidence from which the jury could conclude beyond a reasonable doubt that Costello intended the officer to rely on the false name in violation of Minn.Stat. § 609.506, subd. 1 (1998): "Whoever with intent to obstruct justice gives a fictitious name * * * to a peace officer * * * when that officer makes inquiries incident to a lawful inves-

tigatory stop * * * is guilty of a misdemeanor."

## DECISION

With appropriate instructions to the jury, allowing individual jurors to submit written questions for witnesses, subject to objections by counsel made out of the hearing of jurors, is within the sound discretion of the district court and did not deprive Costello of a fair trial by an impartial jury in violation of the state or federal constitutions. There was sufficient evidence to sustain Costello's conviction of giving a false name to a peace officer.

**Affirmed.**