

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2008

# Daibo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2413

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Daibo v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1593.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1593

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2413

BAWO VERITAS DAIBO

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.
_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency No. A97-135-653)
Immigration Judge:  Walter A. Durling
_____

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2008

Before: BARRY, CHAGARES, and ROTH, Circuit Judges.
_____

(Filed:  February 15, 2008)

OPINION OF THE COURT


CHAGARES, Circuit Judge.

Bawo Veritas Daibo petitions for review of a final order of removal based on the

determination of the Board of Immigration Appeals ("BIA") that he violated his

nonimmigrant student status and committed a removable firearms offense and a crime of

moral turpitude. Daibo argues that his conviction for making a false statement in the course of attempting to purchase a firearm in violation of 18 U.S.C. § 924(a)(1)(A) does not constitute a deportable firearm offense or a crime of moral turpitude. Daibo also contends that the BIA erred in determining that he had violated his nonimmigrant student status. We disagree, and we will deny the petition for review.

I.

As we write only for the parties, we do not set out the facts in great detail. On August 19, 1999, petitioner Bawo Veritas Daibo, a Canadian citizen, was admitted to the United States on an F-1 student visa to pursue an undergraduate degree at Columbia University. On November 7, 2001, he was charged with two counts of violating 18 U.S.C. §§ 924(a)(1)(A) and 924(a) for providing two federally licensed gun dealers in Florida with false information that he was a Florida resident, while attempting to purchase an AK-47 rifle, three semiautomatic pistols, and a semiautomatic rifle.

A jury found Daibo guilty on both counts and he was sentenced to 33 months incarceration. The Judgment in a Criminal Case, dated December 18, 2003, indicated that "the court has adjudicated that the defendant is guilty of the following offense(s): Title & Section: 18:924(a)(1)(A) & 924(a)." Administrative Record (A.R.) 150. Under Section 924(a)(1)(A), "whoever--knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from

disability under the provisions of this chapter . . . shall be fined under this title, imprisoned not more than five years, or both."  18 U.S.C. § 924(a)(1)(A).

The Department of Homeland Security issued Daibo a notice to appear, charging him with removability pursuant to three provisions of the Immigration and Nationality Act ("INA"):  8 U.S.C. §§ 1227(a)(2)(C), (a)(2)(A)(i), (a)(1)(C)(i).  The Immigration Judge (IJ) held a hearing and concluded that Daibo was not eligible for voluntary departure and was removable under all three INA sections.  The BIA upheld the IJ's determination that Daibo was ineligible for voluntary departure and that he had violated the conditions of his visa, but remanded for further explanation of the IJ's decision with respect to the other two grounds of removal.  The IJ issued another decision, the BIA affirmed, and this petition followed.

## II.

We have jurisdiction to hear this appeal pursuant to 8 U.S.C. § 1252(a), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231.  See Stubbs v. Att'y Gen., 452 F.3d 251, 253 n. 4 (3d Cir. 2006).   We review *de novo* whether Daibo's offense constitutes a removable firearm offense, because it is a purely legal question.  Id. at 253.  Although we owe no deference to the BIA's interpretation of federal criminal law, we defer to the BIA's interpretation of the terms in the INA.  Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  We accord Chevron deference to the BIA's conclusion that a particular crime involves moral turpitude, but accord no deference to its determination that elements of a particular criminal statute implicate

3

moral turpitude.  See Partyka v. Att'y Gen., 417 F.3d 408, 411 (3d Cir. 2005) (quoting

Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004)).

III.

Daibo argues that his conviction did not constitute a firearm offense for purposes

of removability.  We disagree.

In order to determine whether a conviction under a statute constitutes a removable

or deportable offense, we presumptively apply the "formal categorical approach" under

which the adjudicator "'must look only to the statutory definitions of the prior offenses'

and may not 'consider other evidence concerning the defendant's prior crimes,' including,

the 'particular facts underlying [a] conviction[].'"  Singh v. Ashcroft, 383 F.3d 144, 147-

48 (3d Cir. 2004) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)); see Alaka

v. Att'y Gen., 456 F.3d 88, 105 (3d Cir. 2006).

We may abandon the formal categorical approach if (1) "the language of the

particular subsection of [the statute on which removal is based] . . . invite[s] inquiry into

the underlying facts of the case," or (2) "the disjunctive phrasing of the statute [of

conviction] similarly invites inquiry into the specifics of the conviction."  Joseph v. Att'y

Gen., 465 F.3d 123, 127 (3d Cir. 2006) (quotation marks omitted).

Here, Daibo argues that § 924(a)(1)(A) is not phrased in the disjunctive, and the

BIA, therefore, erred in moving beyond the categorical approach.  As the Government

notes, however, Daibo was convicted under both § 924(a)(1)(A) *and* 924(a).  Appellee

Br. at 18-20.  Section 924(a), which includes several subsections with different factual

4

predicates and penalties, has relevant disjunctive language that requires inquiry into the specific facts of the case. Singh, 383 F.3d at 163. A conviction based on some parts of the section would constitute a removable firearm offense, while others would not. [1]

Applying a modified categorical approach, we look to the record of conviction, which includes the indictment, verdict, and sentence, to determine the nature of the crime Daibo committed. Alaka, 456 F.3d at 106. The indictment charged Daibo with violating 18 U.S.C. § 924(a)(1)(A) and 924(a) for knowingly making a false statement and representation on Department of Treasury, Bureau of Alcohol, Tobacco, and Firearms Form 4473, Firearms Transaction Record, in connection with attempting to purchase an AK-47 caliber rifle on March 14, 2001, and three .45 caliber semiautomatic pistols and one .50 caliber semiautomatic rifle on April 27, 2001. The judgment described the "Nature Of Offense" as: "Making a False Statement with respect to Information Required by the provisions of 18 U.S.C. Chapter 44, to be Kept in Records of a Federally License Firearms Dealer, in Connection with the attempted purchase of Firearms in violation of 18 USC 924(a)(1)(A)." A.R. 150.

Under § 1227(a)(2)(C), "[a]ny alien . . .convicted *under any law* . . . of attempting . . . to purchase . . . a firearm . . .*in violation of any law*" has committed a removable offense. 8 U.S.C. § 1227(a)(2)(C). As the BIA observed, "the statute's double reference

---

[1] Daibo argues that we cannot consider the Government's contention that Daibo was convicted under both 18 U.S.C. § 924(a)(1)(A) and 924(a) because the BIA did not consider that claim. Appellant Reply Br. at 3. Given that we review *de novo* whether Daibo's offense constitutes a removable firearm offense or a crime of moral turpitude, this argument is without merit.

to 'any law'" constitutes "more than inartful redundancy." App. 14. Daibo violated a law requiring the provision of accurate information to firearm dealers while attempting to purchase a firearm. The BIA, thus, correctly concluded that Daibo's offense fits within the terms of 8 U.S.C. § 1227(a)(2)(C).[2]

Furthermore, Daibo's argument that we should apply the "rule of lenity," under which "deportation provisions [are] to be narrowly construed so as to give the alien as much protection as possible," is without merit. Appellant Br. at 12. We have explained that the rule of lenity is "traditionally reserved for the criminal, not immigration, context," and may only "be applied as a canon of last resort to determine the intent of Congress on an ambiguous issue." Valansi v. Ashcroft, 278 F.3d 203, 214 n.9 (3d Cir. 2002). We do not apply the rule, where, as here, "the intent of Congress is already clear based on an analysis of the plain meaning of the statute." Id. at 214.


IV.

Daibo also argues that his conviction does not constitute a crime of moral turpitude. Again, we disagree.

---

[2] Even applying the categorical approach in the manner Daibo advocates, his offense falls within the plain language of § 1227(a)(2)(C). Sections 924(a) and 924(a)(1)(A) are part of Chapter 44 of the Federal Criminal Code and Rules, entitled "Firearms." Daibo's conviction under § 924(a)(1)(A) for "knowingly mak[ing] any false statement or representation with respect to the information required by this chapter [namely, Chapter 44, Firearms] to be kept in the records of a person licensed under this chapter," for example, a firearms manufacturer, importer, or dealer, falls under the broad scope of § 1227(a)(2)(C).

In determining whether Daibo has been convicted of a crime involving moral turpitude, we look to the "criminal statute and the record of conviction, not the alien's conduct." Partyka, 417 F.3d at 411. Applying this categorical approach, we must first ask whether the statute of conviction covers only morally turpitudinous acts, as determined by the "least culpable conduct necessary to sustain a conviction under the statute." Id. If a statute covers "both turpitudinous and non-turpitudinous acts, . . . it is 'divisible,' and we then look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude." Id. Daibo was convicted under 18 U.S.C. §§ 924(a)(1)(A) and 924(a). Section 924(a) contains both "turpitudinous and non-turpitudinous acts," but the record of conviction points us to § 924(a)(1)(A), which prohibits "knowingly mak[ing] any false statement or representation" to a firearms dealer. 18 U.S.C. § 924(a)(1)(A).

Our case law requires us to look to the *mens rea* required for conviction in determining whether a particular crime involves moral turpitude for purposes of the INA. Partyka, 417 F.3d at 413. We have explained that "the hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." Id. at 414. In addition, we have noted that moral turpitude "contains an honesty component . . . which includes conduct that is contrary to justice, honesty, or morality." Smriko v. Ashcroft, 387 F.3d 279, 283 (3d Cir. 2004). The Supreme Court has observed that "[w]ithout exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude." Jordan v. De George, 341 U.S. 223, 227 (1951).

7

The *mens rea* requirement is satisfied where, as here, the statute of conviction requires "knowingly," not merely negligently, making a false statement on a government form required to purchase a firearm from a federally licensed dealer.

Daibo relies on Matter of Marchena, 12 I&N Dec. 355 (BIA 1967), and asserts that convictions for false statements do not necessarily constitute crimes of moral turpitude. In Marchena, the BIA concluded that it could not determine whether Marchena's conviction was for making a false statement, which would not involve turpitude, or a fraudulent statement, which would. Id. at 357. In addition, Daibo argues that the BIA's decision rested solely on the erroneous assumption that United States v. Sullivan, 459 F.2d 993 (8th Cir. 1972) held that false information provided to dealers under § 924(a) contained "element[s] of materiality." App. 16. Daibo contends that Sullivan expressly held that materiality was *not* an element of 18 U.S.C. § 924(a)(1)(A). Appellant Reply Br. at 7.

Although Daibo is correct that the BIA erred in relying on Sullivan, the BIA's analysis did not rest on Sullivan alone. The BIA explained that "[a] crime involving false statements may or may not constitute a crime involving moral turpitude, depending on whether the crime has as an element the intent to deceive, or if the crime is inherently fraudulent." App. 15. The BIA cited, *inter alia*, Matter of Correa-Garces, 20 I&N Dec. 451 (BIA 1992), in which the Board observed that "[c]onvictions for making false statements have been found to involve moral turpitude" and concluded that false statements on a passport application constituted a crime of moral turpitude. Id. at 454.

8

The BIA rejected Daibo's argument that Matter of Marchena, "stands for the blanket proposition that convictions based on 'false statements,' as opposed to those based on 'fraudulent statements,' cannot serve as a basis for a finding that an alien is removable under section 237(a)(2(A)(1) of the Act." App. 15-16. The BIA emphasized that "the determination of whether a false statements conviction involves moral turpitude centers on whether the underlying conviction has been proven to involve fraud or an intent to deceive, or is otherwise inherently fraudulent." App. 16.

In support of its position, the BIA pointed to more recent cases than Marchena, such as Matter of Flores, 17 I&N Dec. 225 (BIA 1980), in which the BIA concluded that selling false or counterfeit papers relating to alien registry was a crime of moral turpitude because the crime was inherently fraudulent and impaired or obstructed an important function of government by "deceit, graft, trickery, or dishonest means." Id. at 226-29 ("[W]here fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude."). In addition, the BIA cited Matter of Acosta, 14 I&N Dec. 338, 339 (BIA 1973) and explained that the BIA had previously found that a conviction similar to Daibo's constituted a crime of moral turpitude. Id. at 339. The statute at issue in Acosta, 18 U.S.C. § 922(a)(6), prohibited false or fictitious statements in the acquisition of a firearm from a licensed dealer that were "intended or likely to deceive. . . with respect to any fact material to the lawfulness of the sale." Id.

9

To determine materiality, the BIA looked to the information required on ATF Form 4473, which included a buyer's name, address, birth date, criminal background, immigration status, race, sex, height, and weight, and explained that "[t]he materiality of some of these items is obvious; for example, a buyer's status as a felon or undocumented alien renders him ineligible for firearms purchases. Other information about a buyer's physical characteristics could aid an investigation into potentially illegal transactions." App. 16. The BIA concluded that "there are elements of materiality built into the false statements statute codified at 18 U.S.C. § 924." Id. at 16-17.

Daibo knowingly made false statements on ATF forms in an attempt to procure firearms, and in doing so, obstructed an important government function. We therefore agree with the BIA that Daibo's conviction constituted a crime of moral turpitude.

V.

Finally, Daibo contends that he did not violate his nonimmigrant student status, because he did not intend to stop attending courses, but rather was prevented from going to school while incarcerated. He argues that the BIA "should reconsider the applicable standard governing such a charge and adopt a rule limiting this charge to those situations where an alien intentionally does not maintain his non-immigrant status." Appellant Br. at 19. This argument is unavailing.

Contrary to Daibo's contentions, the BIA did not err in determining that he violated his student status when he was serving his 33-month sentence. Students with F-1 visas are admitted to the United States to "pursue a full course of study at an educational

institution approved by the Service." 8 C.F.R. § 214.2(f)(5)(i). The BIA has found that "incarceration for a substantial period for a criminal offense constitutes a violation of nonimmigrant [student] status, in that the respondent is no longer pursuing the purpose for which he was admitted." Matter of Mehta, 14 I&N Dec. 451, 452 (BIA 1973); but see Matter of Murat-Khan, 14 I&N Dec. 465 (BIA 1973) (finding that incarceration for 20 days did not constitute a failure to maintain student status where the criminal conduct did not meaningfully disrupt the pursuit of studies).

Here, Daibo's 33-month sentence interrupted his studies for a far longer period than that considered in Matter of Mehta. The BIA therefore correctly concluded that Daibo was removable because his incarceration, and resulting failure to attend class, violated his student status.

VI.

For the above-stated reasons, we will deny the petition for review.

11