# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1590

_____

Orlando Manuel Godoy Bobadilla,    *
                              *

         Petitioner,    *

                               *   Petition for Review of
     v.                       *   an Order of the Board
                               *   of Immigration Appeals.

Eric H. Holder, Jr., Attorney General    *
of the United States,    *
                               *

         Respondent.    *

_____

Submitted: January 9, 2012
Filed: May 29, 2012

_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

The Immigration and Nationality Act ("INA") provides that an alien lawfully in the United States may be removed (deported) if he "is convicted of two or more crimes involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(ii). Orlando Manuel Godoy Bobadilla, a native and citizen of Canada, entered the United States in 1997 at age 17 and became a lawful permanent resident in 1998. He was convicted in state court of giving a false name to a peace officer in violation of Minn. Stat. § 609.506, Subd. 1, and of theft in violation of Minn. Stat. § 609.52, Subd. 2. The Department of Homeland Security commenced removal proceedings; Bobadilla denied removability. The immigration judge ("IJ") concluded that both convictions were for

crimes involving moral turpitude and ordered Bobadilla removed. The Board of Immigration Appeals ("BIA") affirmed. Bobadilla petitions for review of the BIA's decision. The only issue we will address is whether his conviction for providing a false name to a peace officer is categorically a crime involving moral turpitude, a question of law we have jurisdiction to consider. Recio-Prado v. Gonzales, 456 F.3d 819, 820-21 (8th Cir. 2006). We grant Bobadilla's petition for review and remand.

## I.

The administrative record includes the Minnesota Register of Actions for the giving-of-a-false-name conviction.[1] The Register reports that Bobadilla was charged in December 2001 with giving a false name to a peace officer, driving after license revocation, no proof of insurance, underage drinking and driving, speeding, and running a stop sign. In April 2002, he pleaded guilty to giving a false name and no proof of insurance; the other charges were dismissed. Without a hearing on the facts underlying Bobadilla's conviction, and without receiving any original court records, the IJ concluded that his offense was a crime involving moral turpitude ("CIMT") because fraud was "an element of the offense." The IJ summarily denied counsel's objection to deciding the issue in this categorical fashion:

> [Counsel for Bobadilla]. Well . . . in regards to the false name to a police officer, I would like to request that the modified categorical approach be used because it is a divisible law[. The offense occurred] during a traffic violation.

---

[1]Minn. Stat. § 609.506, Subd. 1, provides: "Whoever with intent to obstruct justice gives a fictitious name other than a nickname, or gives a false date of birth, or false or fraudulently altered identification card to a peace officer [as defined] when that officer makes inquiries incident to a lawful investigatory stop or lawful arrest, or inquiries incident to executing any other duty imposed by law, is guilty of a misdemeanor."

[IJ].  You'll have to appeal that one to the court . . . if you don't think it's correct.

The BIA in affirming addressed this issue in somewhat greater detail but without expanding the administrative record:

> In Matter of Silva-Trevino, [24 I. & N. Dec. 687 (A.G. 2008)], the Attorney General stated that a crime involving moral turpitude is a crime that "involves both reprehensible conduct and some form of scienter," whether specific intent, deliberateness, willfulness, or recklessness. Id. at 706 & n.5. [Bobadilla's] statute of conviction requires a finding that the person provided some form of false information with an intent to obstruct justice.  We conclude that because the statute reflects an intentional attempt to evade responsibility, the conduct covered by the statute is inherently base, vile, and reprehensible, and thus, morally turpitudinous.

Bobadilla argues that his conviction for giving a false name to a peace officer was not categorically a CIMT and therefore the IJ and the BIA "should have looked behind [his] conviction to determine if his act was vile, reprehensible, or base." Resolving this contention requires reviewing many of the administrative and judicial decisions that have interpreted this murky statutory standard.

## II.

Since 1891, the immigration laws have directed the exclusion of persons convicted of "crimes involving moral turpitude." Jordan v. De George, 341 U.S. 223, 229 n.14 (1951).  But Congress has never defined the term; rather, it "left the phrase to future administrative and judicial interpretation." Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995) (quotation omitted), cert. denied, 519 U.S. 834 (1996).  Without question, the term is ambiguous.  In Jordan, for example, the Supreme Court upheld the deportation of an alien convicted of conspiring to defraud the United States of tax

-3-

revenues, concluding "that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." 341 U.S. at 229. But Justices Jackson, Black, and Frankfurter, dissenting, would have ruled that "the phrase 'crime involving moral turpitude' . . . has no sufficiently definite meaning to be a constitutional standard for deportation." Id. at 232. The Supreme Court has not again considered what offenses are included within the term CIMT, leaving those issues to the immigration authorities and the circuit courts.

The INA expressly grants the Attorney General authority to determine "questions of law" arising under the statute. 8 U.S.C. § 1103(a)(1). Thus, "[i]t is clear that principles of Chevron deference[2] are applicable to this statutory scheme." I.N.S v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999). In reviewing the BIA's decision that Bobadilla was convicted of a CIMT, "we give deference to the agency's interpretation of the ambiguous statutory phrase, and we uphold its construction as long as it is reasonable." Chanmouny v. Ashcroft, 376 F.3d 810, 811 (8th Cir. 2004).

In Chanmouny, before addressing the specific crime at issue, we restated the BIA's general definition of a CIMT:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se . . . . Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind.

---

[2]Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).

-4-

Id. at 811-12, quoting In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999). In addition, "[a] finding of moral turpitude . . . requires . . . some form of scienter." Silva-Trevino, 24 I. & N. Dec. at 706. This basic definition has generated little if any disagreement by reviewing circuit courts. We next restated the BIA's "categorical" approach for examining whether a criminal conviction meets this general definition:

> If the statute defines a crime in which moral turpitude necessarily inheres . . . our analysis ends. However, if the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a "divisible" statute, and we look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted.

Chanmouny, 376 F.3d at 812, quoting Ajami, 22 I. & N. Dec. at 950. This categorical approach is consistent with Supreme Court decisions determining whether a prior conviction was a violent felony under the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e)(2)(B). See Taylor v. United States, 495 U.S. 575 (1990); Shepard v. United States, 544 U.S. 13 (2005). So it is not surprising that reviewing circuit courts have found the categorical approach a reasonable method for determining the CIMT issue, as our court did in Chanmouny and in other cases such as Recio-Prado, 456 F.3d at 821, Solano-Chicas v. Gonzales, 440 F.3d 1050, 1055-56 (8th Cir. 2006), and Hernandez-Perez v. Holder, 569 F.3d 345, 348 (8th Cir. 2009) ("we look to the statutory language of the crime, not the underlying facts").

The circuit courts' application of the categorical approach to particular crimes, however, was far from uniform, as the circuits varied in how they determined whether a particular criminal statute was sufficiently "categorical," and in the extent to which they deferred to the BIA's analysis of state criminal statutes. After tolerating circuit court inconsistencies for many years, the Attorney General personally reviewed a BIA decision in 2008 in order to "establish a uniform framework for ensuring that the Act's moral turpitude provisions are fairly and accurately applied." Silva-Trevino,

24 I. & N. Dec. at 688. The absence of an authoritative administrative methodology for resolving moral turpitude inquiries has resulted in a "patchwork [that] is problematic," the Attorney General explained, because national uniformity is of paramount importance, yet "under the existing arrangement . . . [a]n alien who resides in one circuit might be eligible for adjustment of status even though he committed the same crime as an alien who lives in a different circuit and is ineligible for such relief." Id. at 694-95. Because "moral turpitude" is not an element of any criminal offense, the Attorney General concluded that rigid categorical review of a statute's elements was "poorly designed to distinguish crimes that involve moral turpitude from those that do not." Id. at 695. Categorically excluding a crime based on the hypothetical minimum conduct that could result in conviction "is likely to result in under-inclusive application of the Act's moral turpitude provisions," whereas categorically including a crime "if moral turpitude inheres in the 'usual' or 'common' case is likely to be over-inclusive." Id.

For these reasons, the Attorney General adopted a new method for determining the CIMT issue, retaining the basic categorical approach but tailoring it to the nature of the CIMT inquiry and the fact that the inquiry is conducted in civil administrative proceedings rather than criminal trials. The result was two significant changes: first, to determine whether a crime's statutory elements make it categorically or inherently a CIMT, the Attorney General adopted the "realistic probability" standard the Supreme Court had recently applied to a different INA provision in Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007):

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his

own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

Silva-Trevino, 24 I. & N. Dec. at 697, quoting Duenas-Alvarez, 549 U.S. at 193.[3]  If no such realistic probability exists, as the BIA concluded in this case, the crime is categorically a CIMT.  Id. at 697-704.  But in cases where this initial inquiry reveals that a realistic probability does exist, the immigration judge must apply step two of the Silva-Trevino methodology, essentially the modified categorical approach of Shepard with the important modification that, if necessary, the immigration judge may undertake a step three examination of the underlying facts of conviction:

> (2) if the categorical inquiry does not resolve the question, look to the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript; and (3) if the record of conviction does not resolve the inquiry, consider any additional evidence the adjudicator

---

[3]Coincidentally, a few months after the Silva-Trevino decision, the Supreme Court addressed this issue in deciding whether a Florida conviction for attempted burglary was a "violent felony" under the ACCA.  James v. United States, 550 U.S. 192 (2007).  The Court cited Duenas-Alvarez in rejecting the contention "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury" -- the "under-inclusiveness" problem that concerned the Attorney General.  Id. at 208.  "Rather," the Court concluded, "the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury" -- an inquiry which does not address the Attorney General's concern with over-inclusiveness.  Id. (emphasis added).  We note that the Attorney General compensated for his more lenient adaptation of the realistic probability concept by authorizing immigration judges to inquire into the facts underlying the alien's prior conviction at step three, Silva-Trevino, 24 I. & N. at 704, a step the Supreme Court declined to authorize in federal criminal cases.  See Taylor, 495 U.S. at 601-02.  In our view, there is no conflict, as Congress has granted the Attorney General this interpretive authority.

determines is necessary or appropriate to resolve accurately the moral turpitude question.

24 I. & N. Dec. at 704.[4]

The Attorney General's decision in Silva-Trevino has received a hostile reception in some circuits. In Jean-Louis v. Attorney General., 582 F.3d 462, 473-74 (3d Cir. 2009), the Third Circuit refused to defer to the new methodology, noting that "the BIA, prior attorneys general, and numerous courts of appeals have repeatedly held that the term 'convicted' [in 8 U.S.C. § 1227(a)(2)(A)(ii)] forecloses individualized inquiry in an alien's specific conduct and does not permit examination of extra-record evidence." Accord Prudencio v. Holder, No. 10-2382, 2012 WL 256061, at *9 (4th Cir. Jan. 30, 2012); Fajardo v. Att'y Gen., 659 F.3d 1303, 1310 (11th Cir. 2011).[5] Bobadilla argues the BIA erred in relying on Silva-Trevino because we rejected its "entire analysis" when we observed, "We are bound by our circuit's precedent, and to the extent Silva-Trevino is inconsistent, we adhere to circuit law." Guardado-Garcia v. Holder, 615 F.3d 900, 902 (8th Cir. 2010), cert. denied, 131 S. Ct. 2445 (2011). But that statement was not necessary to the decision

---

[4]In adopting step three, the Attorney General expressly agreed with the Seventh Circuit that the evidentiary limitations in examining prior convictions in criminal cases need not fully apply to the BIA's CIMT determinations. See Ali v. Mukasey, 521 F.3d 737, 742-43 & n.* (7th Cir. 2008) cert. denied, 129 S. Ct. 2853 (2009), where Chief Judge Easterbrook noted significant differences and criticized other circuit decisions such as Chanmouny that had "applied the Taylor and Shepard approach directly to immigration cases, without remarking the constitutional and statutory differences."

[5]Not surprisingly, given its prior decision in Ali, the Seventh Circuit has sustained the Silva-Trevino analysis. See Mata-Guerrero v. Holder, 627 F.3d 256, 260-61 (7th Cir. 2010). Thus, a circuit conflict on this issue already exists.

in <u>Guardado-Garcia</u>,[6] and it was wrong as a matter of federal administrative law. "The Supreme Court has repeatedly held that agencies may validly amend regulations to respond to adverse judicial decisions, or for other reasons, so long as the amended regulation is a permissible interpretation of the statute." <u>Mayo Found. for Med. Educ. & Research v. United States</u>, 568 F.3d 675, 683 (8th Cir. 2009). In <u>Mayo</u>, we upheld a Treasury Regulation promulgated expressly to overrule adverse judicial interpretations of the prior regulation. <u>Id.</u> The Supreme Court granted certiorari and *unanimously* affirmed:

> Under <u>Chevron</u> . . . . [w]e have repeatedly held that "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the <u>Chevron</u> framework. We have instructed that "neither antiquity nor contemporaneity with [a] statute is a condition of [a regulation's] validity." And we have found it immaterial to our analysis that a "regulation was prompted by litigation."

<u>Mayo Found. for Med. Educ. & Research v. United States</u>, 131 S. Ct. 704, 712 (2011) (citations omitted). No circuit court has carefully analyzed the Attorney General's reasoning in <u>Silva-Trevino</u> and concluded that his new methodology is an unreasonable way of determining if a crime falls within the ambiguous statutory term, "crimes involving moral turpitude." We conclude that the methodology is a reasonable interpretation of the statute and therefore must be given deference by a reviewing court.

---

[6]The statement was in response to petitioner's argument that the BIA erred by not applying the Silva-Trevino methodology. But the argument was flawed. The BIA ruled that the crime in question was, categorically, a CIMT, a determination that ends the inquiry under Silva-Trevino, 24 I. & N. Dec. at 704.

In this case, the IJ's decision made no mention of Silva-Trevino's governing standard. The BIA purported to apply Silva-Trevino in concluding that providing a false name to a peace officer in violation of Minn. Stat. § 609.506.1 is inherently or categorically a CIMT. But its decision simply reasoned "that because the statute reflects an intentional attempt to evade responsibility, the conduct covered by the statute is inherently base, vile, and reprehensible." Bobadilla argues his crime is not "inherently base, vile, or depraved" and therefore the BIA should have "looked behind his conviction." We agree.

The BIA's reasoning is consistent with the weight of administrative and judicial authority prior to Silva-Trevino. The Supreme Court established in Jordan that a crime in which fraud is an element is categorically a CIMT. 341 U.S. at 229. Although Minn. Stat. § 609.506, Subd. 1, requires proof of "intent to obstruct justice," rather than intent to defraud, numerous courts have upheld CIMT decisions based on "other conduct that is sufficient to support a finding of moral turpitude, namely, making false statements and concealing criminal activity." Padilla v. Gonzales, 397 F.3d 1016, 1020 (7th Cir. 2005) (knowingly providing false information to police officer to prevent apprehension or obstruct prosecution); see Castillo-Torres v. Holder, 394 F. App'x 517, 521 (10th Cir. 2010) (unpublished) (giving false name with intent to mislead peace officer lawfully discharging duties); Daibo v. Att'y Gen., 265 F. App'x 56, 60-63 (3d Cir. 2008) (unpublished) (knowingly false statements on ATF forms "obstructed an important government function . . . [and] constituted a crime of moral turpitude."); Rodriguez v. Gonzales, 451 F.3d 60, 63-64 (2d Cir. 2006) (knowingly false statement on passport is CIMT because it involves "deceit and an intent to impair the efficiency and lawful functioning of the government"); Omagah v. Ashcroft, 288 F.3d 254, 262 (5th Cir. 2002), and cases cited ("almost all other courts have held that intentionally deceiving the government involves moral turpitude"). But see Blanco v. Mukasey, 518 F.3d 714, 718 (9th Cir.

2008) (statute making it a misdemeanor to "falsely identify himself or herself as another person or as a fictitious person . . . upon a lawful detention or arrest" in order to evade judicial process or proper identification is *not* categorically a CIMT) (quotation omitted).

These decisions applied the rigid categorical approach of Taylor and Shepard, not the more flexible Silva-Trevino methodology. Our problem is that the BIA did not make the realistic probability inquiry Silva-Trevino now mandates. Minn. Stat. § 609.506, Subd. 1, requires proof of "intent to obstruct justice," a broad, undefined term.[7] We reject the notion, all too prevalent in government circles, that every person who intentionally makes a government official's task more difficult is guilty of "inherently base, vile, or depraved" conduct. One need look no further than the application notes to the obstruction-of-justice enhancement in the federal Sentencing Guidelines to confirm that a wide variety of conduct reflecting a broad range of anti-social intentions can legitimately be called "obstruction of justice." See U.S.S.G. § 3C1.1, comment. (nn.4, 5). This is the type of crime where the risk of both over-inclusiveness and under-inclusiveness is real.

In this case, the Register of Action revealed that Bobadilla gave a false name in the course of a traffic stop, a time when many citizens who are not "base, vile, or depraved" may be less than fully truthful or cooperative. The statute does not require proof that the "intent to obstruct justice" was successful, or that it misled the police officer even for a moment. Indeed, in State v. Costello, 620 N.W.2d 924, 928-29 (Minn. App. 2001), the court upheld a conviction under § 609.506, Subd. 1, even though, at trial, defendant "admitted that he gave a police officer a false name when

---

[7]What little Minnesota case law exists suggests that the term is construed more broadly than the plain meaning of "inherently vile, base, or depraved." "Giving a false name in order to avoid arrest or investigation or to pass blame to another would be sufficient to show an intentional obstruction of justice." State v. Russell, No. C9-01-2215, 2002 WL 31455272, at *3 (Minn. App. Nov. 5, 2002) (unpublished).

he was stopped, but claimed he did not intend to obstruct justice because he immediately gave his correct name when the officer warned him that giving a false name to a police officer was a chargeable offense" Id. at 925.[8]  In these circumstances, the record reflects a "realistic probability" that Minnesota would apply § 609.506, Subd. 1, to conduct that does not involve moral turpitude.  When the issue is removability, as in this case, the government has the burden of proof.  The Attorney General expressly addressed this situation in remanding for further proceedings in Silva-Trevino:

> where a criminal statute (such as the one in issue in this case) does not require proof of an element or fact that categorically evidences moral turpitude, it will be more difficult for the Government to prove that moral turpitude necessarily inheres in a conviction and thus that categorical treatment is appropriate.  In such circumstances, the Government can meet its burden by proving, in the second [or third] stage of the inquiry, that the alien's individual conviction was for a crime that in fact involved moral turpitude.

Silva-Trevino, 24 I. & N. at 709 n.4.  We conclude that the IJ and the BIA departed from the methodology mandated by Silva-Trevino in not requiring the Government to meet its burden in this fashion.

For these reasons, we grant the petition for review and remand to the BIA for further proceedings.  This disposition makes it unnecessary to address whether Bobadilla was entitled to relief from removal pending disposition of his motion to the state court for post-conviction relief from these two convictions because counsel failed to advise him he would be deported if he pleaded guilty to the theft and false

---

[8] See also Morales-Reyes v. State, No. A05-959, 2006 WL 997859, *at 1 (Minn. App. April 18, 2006) (unpublished).  By contrast, the conduct supporting the gross misdemeanor conviction for violating § 609.506, Subd. 2, in Russell, 2002 WL 31455272, at *3, clearly did involve moral turpitude.

name charges. See 8 U.S.C. § 1101(a)(48)(A); <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473 (2010); <u>Hassan v. Holder</u>, 446 F. App'x 822, 823 (8th Cir. 2012) (unpublished); <u>Izedonmwen v. I.N.S.</u>, 37 F.3d 416, 418 n.3 (8th Cir. 1994).

GRUENDER, Circuit Judge, dissenting.

I respectfully dissent. In my view, the BIA reasonably concluded that providing false identification with intent to obstruct justice in violation of Minn. Stat. § 609.506, subdiv. 1 is categorically a "crime involving moral turpitude" ("CIMT"), and the resolution of this case does not require us to address whether the *Silva-Trevino* methodology is a reasonable way of determining whether a crime involves moral turpitude.

The Court places dispositive weight on its insight that "in the course of a traffic stop, . . . many citizens who are not 'base, vile, or depraved' may be less than fully truthful or cooperative." *Ante* at 11. The proper focus, of course, is not on whether the person involved is "base, vile, or depraved" in some general sense, *id.*, but rather on whether the "nature of the *act*" is "intrinsically wrong," *Recio-Prado v. Gonzales*, 456 F.3d 819, 821 (8th Cir. 2006) (emphasis added) (quotation omitted). The BIA has long held that the act of impairing or obstructing a function of the government by "deceit, graft, trickery, or dishonest means" is morally turpitudinous. *See In re Flores*, 17 I. & N. Dec. 225, 229 (B.I.A. 1980) (listing BIA decisions); *see also Lateef v. Dept. of Homeland Sec.*, 592 F.3d 926, 929 (8th Cir. 2010) ("Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude."). The Court recognizes that the "weight of administrative and judicial authority" accords with that conclusion. *Ante* at 10. In light of this broad supporting authority, it cannot be unreasonable for the BIA to maintain, even after the Attorney General's adoption of the *Silva-Trevino* methodology, that the act of providing false information to law enforcement with the intent to obstruct justice is categorically an act of moral turpitude.

-13-

The Court recognizes that the BIA concluded that Bobadilla's conviction was categorically a CIMT after express citation to the *Silva-Trevino* methodology. *Ante* at 7. The Court also recognizes that the *Silva-Trevino* methodology requires the BIA to proceed to the modified categorical analysis of step two or the individual conduct inquiry of step three only in cases where a "realistic probability" exists that the State would apply its statute to conduct not involving moral turpitude. *Id.* at 7. Nevertheless, the Court concludes that the BIA "should have looked behind [Bobadilla's] conviction." *Ante* at 10. To the contrary, once the BIA reasonably concluded that the acts criminalized by the statute necessarily met the definition of an act of moral turpitude, there was no "realistic probability . . . that the State would apply its statute to conduct that falls outside" the ambit of morally turpitudinous acts and thus no reason to proceed to steps two or three. *See In re Silva-Trevino*, 24 I. & N. Dec. 687, 697 (A.G. 2008) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

To circumvent the reasonableness of the BIA's conclusion at step one, the Court misreads Minnesota cases to suggest that the statute criminalizes some conduct that may not be morally turpitudinous. For example, the Court quotes the defendant's claim in *Minnesota v. Costello*, 620 N.W.2d 924, 925 (Minn. Ct. App. 2001), that, after he was stopped for driving under the influence of alcohol and gave officers his brother's name, he "did not intend to obstruct justice because he immediately gave his correct name when the officer warned him that giving a false name to a police officer was a chargeable offense." *Ante* at 11-12. I note that the conviction was affirmed because the court found that a reasonable jury could infer from the defendant's testimony that he "intended the officer to rely on the false name . . . [in order] 'to obstruct justice.'" *Costello*, 620 N.W.2d at 928 (quoting Minn. Stat. § 609.506, subdiv. 1). The Court cites no authority for the proposition that an attempt to deflect a police investigation becomes morally blameless after the actor recants based on fear of a penalty.

The Court also cites *Morales-Reyes v. Minnesota*, No. A05-959, 2006 WL 997859 (Minn. Ct. App. Apr. 18, 2006) (unpublished), to support its assertion that Bobadilla's conviction did not categorically require an actual intent to obstruct justice. In *Morales-Reyes*, a defendant sought post-conviction relief ten years after a guilty plea to a charge of violating § 609.506, subdiv. 1. The court denied post-conviction relief because, *inter alia*, while the defendant testified in the post-conviction hearing that "he did not tell the police his real name when they asked for it[, t]he police report states that instead, [the defendant] produced another man's driver's license." *Id.* at * 1. The court noted that the defendant gave his true identity after the officers discovered that the other identity was associated with an outstanding arrest warrant from Texas. *Id.* While the Court apparently again finds that the defendant's change of heart indicates an absence of moral turpitude, the fact that the defendant abandoned his ruse *after* learning it had put him in a worse position with law enforcement hardly negates the intrinsic wrong of attempting to foist the legal consequences of his own actions onto someone else.

In short, there is no support for the Court's suggestion that the intent to obstruct justice required for conviction under the statute at issue here is distinguishable from the intent required for the convictions at issue in the "weight of administrative and judicial authority," *ante* at 10, which holds "making false statements and concealing criminal activity" categorically to constitute a CIMT, *Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005). Thus, regardless of the Court's disapproval of "the notion, all too prevalent in government circles, that every person who intentionally makes a government official's task more difficult is guilty of 'inherently base, vile, or depraved' conduct," *ante* at 11, the BIA's conclusion that providing false identification to law enforcement with the intent to obstruct justice is categorically an act of moral turpitude is eminently reasonable, and we must defer to it. *See Da Silva Neto v. Holder*, --- F.3d ---, 2012 WL 1648909, at *5 (1st Cir. May 10, 2012) ("One can certainly argue that destroying property, even with an evil

-15-

mindset, is not necessarily 'base, vile, or depraved' behavior . . . . But that determination is not ours to make on a de novo basis.").

The Court nevertheless finds that Bobadilla's crime was not categorically a CIMT after concluding that the BIA erred at step one of the *Silva-Trevino* methodology by relying on cases employing the "rigid categorical approach of *Taylor* and *Shepard*" instead of the "realistic probability" test adopted by *Silva-Trevino*. *Ante* at 10-11. However, even assuming the BIA mistakenly applied the *Taylor* and *Shepard* categorical approach, such an error would be harmless to the petitioner. If the BIA concluded under the *Taylor* and *Shepard* categorical approach that it is hypothetically *impossible* for a conviction under Minn. Stat. § 609.506, subdiv. 1 not to be a CIMT, then by simple logic it also concluded implicitly that there could not be any "realistic probability" that a conviction under the statute would not be a CIMT. Conversely, if the Court is correct that *Costello* creates a "realistic probability" that a conviction under the statute might not involve a CIMT, then necessarily the conviction would not be inherently a CIMT under the stricter *Taylor* and *Shepard* categorical approach. The Court thus uses what is at most a harmless error as a lever to pronounce upon the reasonableness of the *Silva-Trevino* methodology. The result would be the same under either standard, and I would reach neither the reasonableness of the Attorney General's *Silva-Trevino* methodology nor whether *Guardado-Garcia* forecloses deference to it. *See Da Silva Neto*, 2012 WL 1648909, at *2 n.6 (declining to decide whether to adopt *Silva-Trevino* step three in the face of its rejection by the Third, Fourth, Eighth, and Eleventh Circuits).

I make a final note on the import of the Court's holding. By concluding that there is a "realistic probability" that Minnesota would apply Minn. Stat. § 609.506, subdiv. 1 to conduct that does not involve moral turpitude, the Court necessarily invites the BIA to examine the record of conviction, such as the charging documents, guilty plea, plea transcript, and judgment, and, if necessary, to consider "any additional evidence [it] determines is necessary or appropriate to resolve accurately

the moral turpitude question." *Ante* at 7-8. By carefully analogizing the facts of this case, as determined on remand, to its own published opinions and the opinions of this Court, the BIA may very well reach the same conclusion as it originally did—that Bobadilla's intentional attempt to evade responsibility is a CIMT. Over time, the BIA may use its case-by-case adjudicatory process reasonably to clarify when a conviction requiring deception with intent to obstruct justice qualifies as a CIMT. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). Similarly, developments in Minnesota case law may clarify that § 609.506, subdiv. 1 does in fact require conduct that categorically involves a CIMT. In the meantime, the BIA should not misread the Court's opinion to require in every case an inquiry into the specific facts of each individual's conduct at step one of the *Silva-Trevino* methodology or to require it always to address steps two and three after concluding that a conviction categorically constitutes a CIMT.

Because I cannot say that the BIA unreasonably concluded that a conviction under Minn. Stat. § 609.506, subdiv. 1 necessarily reflects "an intentional attempt to evade responsibility" by deception, and that, in accord with the weight of judicial authority, such a crime categorically is a CIMT regardless of whether the *Silva-Trevino* methodology is reasonable, I respectfully dissent.

---

-17-