GRUENDER, Circuit Judge,
dissenting.
I respectfully dissent. In my view, the BIA reasonably concluded that providing false identification with intent to obstruct justice in violation of Minn.Stat. § 609.506, subdiv. 1 is categorically a “crime involving moral turpitude” (“CIMT”), and the resolution of this case does not require us to address whether the Silvar-Trevino methodology is a reasonable way of determining whether a crime involves moral turpitude.
The Court places dispositive weight on its insight that “in the course of a traffic stop, ... many citizens who are not ‘base, vile, or depraved’ may be less than fully truthful or cooperative.” Ante at 1058. The proper focus, of course, is not on whether the person involved is “base, vile, or depraved” in some general sense, id., but rather on whether the “nature of the act ” is “intrinsically wrong,” Recio-Prado v. Gonzales, 456 F.3d 819, 821 (8th Cir.2006) (emphasis added) (quotation omitted). The BIA has long held that the act of impairing or obstructing a function of the government by “deceit, graft, trickery, or dishonest means” is morally turpitudinous. See In re Flores, 17 I. & N. Dec. 225, 229 (B.I.A.1980) (listing BIA decisions); see also Lateef v. Dept. of Homeland Sec., 592 F.3d 926, 929 (8th Cir.2010) (“Crimes involving the intent to deceive or defraud are generally considered to involve moral turpitude.”). The Court recognizes that the “weight of administrative and judicial authority” accords with that conclusion. Ante at 1057. In light of this broad supporting authority, it cannot be unreasonable for the BIA to maintain, even after the Attorney General’s adoption of the Silvo-Trevino methodology, that the act of providing false information to law enforcement with the intent to obstruct justice is categorically an act of moral turpitude.
The Court recognizes that the BIA concluded that Bobadilla’s conviction was categorically a CIMT after express citation to the Silvctr-Trevino methodology. Ante at 1056. The Court also recognizes that the Silvctr-Trevino methodology requires the BIA to proceed to the modified categorical analysis of step two or the individual conduct inquiry of step three only in cases where a “realistic probability” exists that the State would apply its statute to conduct not involving moral turpitude. Id. at 1056. Nevertheless, the Court concludes *1060 that the BIA “should have looked behind [Bobadilla’s] conviction.” Ante at 1053. To the contrary, once the BIA reasonably concluded that the acts criminalized by the statute necessarily met the definition of an act of moral turpitude, there was no “realistic probability ... that the State would apply its statute to conduct that falls outside” the ambit of morally turpitudinous acts and thus no reason to proceed to steps two or three. See In re Silva-Trevino, 24 I. & N. Dec. 687, 697 (A.G.2008) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).
To circumvent the reasonableness of the BIA’s conclusion at step one, the Court misreads Minnesota cases to suggest that the statute criminalizes some conduct that may not be morally turpitudinous. For example, the Court quotes the defendant’s claim in Minnesota v. Costello, 620 N.W.2d 924, 925 (Minn.Ct.App.2001), that, after he was stopped for driving under the influence of alcohol and gave officers his brother’s name, he “did not intend to obstruct justice because he immediately gave his correct name when the officer warned him that giving a false name to a police officer was a chargeable offense.” Ante at 1058. I note that the conviction was affirmed because the court found that a reasonable jury .could infer from the defendant’s testimony that he “intended the officer to rely on the false name ... [in order] ‘to obstruct justice.’ ” Costello, 620 N.W.2d at 928 (quoting Minn.Stat. § 609.506, subdiv. 1). The Court cites no authority for the proposition that an attempt to deflect a police investigation becomes morally blameless after the actor recants based on fear of a penalty.
The Court also cites Morales-Reyes v. Minnesota, No. A05-959, 2006 WL 997859 (Minn.Ct.App. Apr. 18, 2006) (unpublished), to support its assertion that Bobadilla’s conviction did not categorically require an actual intent to obstruct justice. In Morales-Reyes, a defendant sought post-conviction relief ten years after a guilty plea to a charge of violating § 609.506, subdiv. 1. The court denied post-conviction relief because, inter alia, while the defendant testified in the post-conviction hearing that “he did not tell the police his real name when they asked for it[, t]he police report states that instead, [the defendant] produced another man’s driver’s license.” Id. at *1. The court noted that the defendant gave his true identity after the officers discovered that the other identity was associated with an outstanding arrest warrant from Texas. Id. While the Court apparently again finds that the defendant’s change of heart indicates an absence of moral turpitude, the fact that the defendant abandoned his ruse after learning it had put him in a worse position with law enforcement hardly negates the intrinsic wrong of attempting to foist the legal consequences of his own actions onto someone else.
In short, there is no support for the Court’s suggestion that the intent to obstruct justice required for conviction under the statute at issue here is distinguishable from the intent required for the convictions at issue in the “weight of administrative and judicial authority,” ante at 1057, which holds “making false statements and concealing criminal activity” categorically to constitute a CIMT, Padilla v. Gonzales, 397 F.3d 1016, 1020 (7th Cir.2005). Thus, regardless of the Court’s disapproval of “the notion, all too prevalent in government circles, that every person who intentionally makes a government official’s task more difficult is guilty of ‘inherently base, vile, or depraved’ conduct,” ante at 1058, the BIA’s conclusion that providing false identification to law enforcement with the intent to obstruct justice is categorically an act of moral turpitude is eminently reasonable, and we must defer to it. See Da Silva Neto v. Holder, 680 F.3d 25, 33 *1061 (1st Cir.2012) (“One can certainly argue that destroying property, even with an evil mindset, is not necessarily ‘base, vile, or depraved’ behavior.... But that determination is not ours to make on a de novo basis.”).
The Court nevertheless finds that Bobadilla’s crime was not categorically a CIMT after concluding that the BIA erred at step one of the Silva-Trevino methodology by relying on cases employing the “rigid categorical approach of Taylor and Shepard” instead of the “realistic probability” test adopted by Silva-Trevino. Ante at 1057-58. However, even assuming the BIA mistakenly applied the Taylor and Shepard, categorical approach, such an error would be harmless to the petitioner. If the BIA concluded under the Taylor and Shepard categorical approach that it is hypothetically impossible for a conviction under Minn.Stat. § 609.506, subdiv. 1 not to be a CIMT, then by simple logic it also concluded implicitly that there could not be any “realistic probability” that a conviction under the statute would not be a CIMT. Conversely, if the Court is correct that Costello creates a “realistic probability” that a conviction under the statute might not involve a CIMT, then necessarily the conviction would not be inherently a CIMT under the stricter Taylor and Shepard categorical approach. The Court thus uses what is at most a harmless error as a lever to pronounce upon the reasonableness of the Silva-Trevino methodology. The result would be the same under either standard, and I would reach neither the reasonableness of the Attorney General’s Silva-Trevino methodology nor whether Guardado-Garda forecloses deference to it. See Da Silva Neto, 680 F.Sd at 29 n. 6 (declining to decide whether to adopt Silva-Trevino step three in the face of its rejection by the Third, Fourth, Eighth, and Eleventh Circuits).
I make a final note on the import of the Court’s holding. By concluding that there is a “realistic probability” that Minnesota would apply Minn.Stat. § 609.506, subdiv. 1 to conduct that does not involve moral turpitude, the Court necessarily invites the BIA to examine the record of conviction, such as the charging documents, guilty plea, plea transcript, and judgment, and, if necessary, to consider “any additional evidence [it] determines is necessary or appropriate to resolve accurately the moral turpitude question.” Ante at 1056. By carefully analogizing the facts of this case, as determined on remand, to its own published opinions and the opinions of this Court, the BIA may very well reach the same conclusion as it originally did — that Bobadilla’s intentional attempt to evade responsibility is a CIMT. Over time, the BIA may use its case-by-case adjudicatory process reasonably to clarify when a conviction requiring deception with intent to obstruct justice qualifies as a CIMT. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Similarly, developments in Minnesota case law may clarify that § 609.506, subdiv. 1 does in fact require conduct that categorically involves a CIMT. In the meantime, the BIA should not misread the Court’s opinion to require in every case an inquiry into the specific facts of each individual’s conduct at step one of the Silva-Trevino methodology or to require it always to address steps two and three after concluding that a conviction categorically constitutes a CIMT.
Because I cannot say that the BIA unreasonably concluded that a conviction under Minn.Stat. § 609.506, subdiv. 1 necessarily reflects “an intentional attempt to evade responsibility” by deception, and that, in accord with the weight of judicial authority, such a crime categorically is a CIMT regardless of whether the Silvar *1062 Trevino methodology is reasonable, I respectfully dissent.